UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| HELENE ATTIAS and TRISHA NADEAU, on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br><br>   v.<br><br>MARS PETCARE US, INC.<br><br>                Defendant. | Case No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Helene Attias and Trisha Nadeau ("Plaintiffs") bring this action on behalf of themselves, and all others similarly situated against Defendant Mars Petcare US, Inc. ("Defendant" or "Mars"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves which are based on personal knowledge.

## NATURE OF THE ACTION

1. Defendant Mars is a manufacturer and seller of pet food, including PEDIGREE Complete Nutrition Roasted Chicken & Vegetable Dog Kibble (the "Contaminated Kibble").[1]

2. The packaging of the Contaminated Kibble unequivocally promises that the pet food is a "100% Complete & Balanced" (the "Nutrition Claim") diet for dogs.

3. Reasonable consumers believe, based on the Nutrition Claim, that the Contaminated Kibble would contain all the nutrients required for their pets and that those nutrients would be present in amounts suitable for their pets.

---

[1] The Contaminated Kibble includes, but is not limited to, Pedigree Complete Nutrition Roasted Chicken & Vegetable Adult Dog Kibble in 3.5, 12.5, 14, 16, 18, 30, 40, 44, and 55 pound bags.

4. However, despite the Nutrition Claim, Mars manufactured and sold Contaminated Kibble that failed to comply with Mars' representations regarding the quality and composition of the Contaminated Kibble. In fact, Mars manufactured and sold Contaminated Kibble that independent testing found to contain excessive amounts of Vitamin D.

5. Excessive Vitamin D can adversely affect the health of dogs by increasing the risk of illness or death.

6. Because the Contaminated Kibble contained an undisclosed excess of Vitamin D, pet owners throughout the United States purchased Contaminated Kibble that was falsely and misleadingly marketed as an "100% Complete & Balanced" diet for dogs.

7. Plaintiffs bring this action individually, and on behalf of all similarly situated individuals who purchased the falsely and deceptively labeled Contaminated Kibble for violations of New York General Business Law §§ 349 and 350, and breach of express warranty.

## PARTIES

8. Plaintiff Helene Attias is domiciled in New York, residing in St. James, New York.

9. In or around spring of 2024, Plaintiff Attias purchased the Contaminated Kibble from Pet Supplies Plus in Smithtown, New York for her personal use. Prior to her purchase, Plaintiff Attias reviewed the accompanying labels and disclosures, including Defendant's representation that the Contaminated Kibble would provide an "100% Complete & Balanced" diet for her dog Lulu. She understood the claims as warranties that the Contaminated Kibble would contain all the nutrients required for her pet and that those nutrients would be present in amounts suitable for her pet. Plaintiff Attias relied on the claims in deciding to purchase the Contaminated Kibble. As such, the claims were part of the basis of the bargain, in that she

would not have purchased the Contaminated Kibble on the same terms had she known that the claims were not true. Plaintiff Attias was unaware that the Contaminated Kibble contained and/or had the risk of containing elevated levels of Vitamin D that did not conform to the labels, packaging, advertising, and statements on the packaging. Indeed, when Plaintiff Attias fed the Contaminated Kibble to Lulu as directed by Defendant, Lulu developed vomiting and diarrhea as a result of the elevated Vitamin D in the Contaminated Kibble. Accordingly, Plaintiff did not receive the benefit of her bargain and was injured by paying a price premium for Contaminated Kibble that had no – or *de minimus* – value based on the elevated levels of Vitamin D that did not conform to the representations on the Contaminated Kibble's packaging.

10. Plaintiff Trisha Nadeau is domiciled in Michigan, residing in Dansville, Michigan.

11. In or around November 2023, Plaintiff Nadeau purchased the Contaminated Kibble from Walmart in Fowlerville, Michigan for her personal use. Prior to her purchase, Plaintiff Nadeau reviewed the accompanying labels and disclosures, including Defendant's representation that the Contaminated Kibble would provide an "100% Complete & Balanced" diet for her dog Sheba. Plaintiff Nadeau understood the claims as warranties that the Contaminated Kibble would contain all the nutrients required for her pet and that those nutrients would be present in amounts suitable for her pet. Plaintiff relied on the claims in deciding to purchase the Contaminated Kibble. As such, the claims were part of the basis of the bargain, in that Plaintiff would not have purchased the Contaminated Kibble on the same terms had she known that the claims were not true. Plaintiff was unaware that the Contaminated Kibble contained and/or had the risk of containing elevated levels of Vitamin D that did not conform to the labels, packaging, advertising, and statements on the packaging. Indeed, when Plaintiff fed

the Contaminated Kibble to Sheba as directed by Defendant, Lulu developed vomiting and diarrhea as a result of the elevated Vitamin D in the Contaminated Kibble.  Accordingly, Plaintiff did not receive the benefit of her bargain and was injured by paying a price premium for the Contaminated Kibble that had no – or *de minimus* –value based on the elevated levels of Vitamin D that did not conform to the representations on the Contaminated Kibble's packaging.

12. Defendant Mars Petcare US, Inc. is a Delaware company with its headquarters and principal place of business in Franklin, Tennessee.  Defendant is a self-proclaimed leading provider of science-backed pet nutrition.  Defendant manufactures, markets, distributes and advertises Pedigree brand pet food, including the Contaminated Kibble throughout the United States online and through brick-and-mortar retail stores.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class Members; the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs; and at least one Class member is a citizen of a state different from Defendant.

14. This Court has personal jurisdiction over Defendant because its principal place of business is in Franklin, Tennessee and Defendant conducts substantial business within Tennessee, including the promotion, marketing, and sale of the Kibble in this State to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.  Further, a substantial part of the events or omissions giving rise to Plaintiffs' claims also occurred in Tennessee.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides in this district and a substantial part of the events or omissions giving rise to Plaintiffs' claims also occurred in this District.

## FACTUAL ALLEGATIONS

**A. Mars Represents the Contaminated Kibble is an 100% Complete and Balanced" Diet for Dogs**

16. Mars' PEDIGREE brand is "the world's no. 1 dog food brand[.]"[2]

17. As part of Mars' marketing and sales, it makes numerous representations and warranties about the quality of its dog food and manufacturing processes. In particular, Mars promises the Contaminated Kibble is an "100% Complete & Balanced" diet for dogs:

---

[2] https://www.mars.com/our-brands/petcare




18. Mars also promises the Contaminated Kibble contains "36 Vitamins, Minerals, and Amino Acids":



19. In product descriptions, Mars promises that the Contaminate Kibble "delivers 100% complete and balanced nutrition" for dogs and that the Contaminated kibble is "made in the USA with the world's finest ingredients":

**PRODUCT DESCRIPTION**

Every dog deserves the best… that's why PEDIGREE Complete Nutrition Dry Dog Food delivers 100% complete and balanced nutrition for your adult dog. It has the antioxidants, vitamins, and minerals canines need to help maintain a healthy lifestyle, and in the delicious roasted chicken flavor they love. This tasty dry kibble helps clean teeth and support healthy digestion… Plus, it's enriched with omega-6 fatty acids to help nourish your dog's skin and promote a healthy coat. Irresistible in every way, this dry dog food provides whole grains and protein, and was made in the USA with the world's finest ingredients. It has no artificial flavors, no high fructose corn syrup, and no added sugar. Dogs bring out the good in us. PEDIGREE brings out the good in them. Feed the good.

 Delivers complete and balanced nutrition enriched with omega-6 fatty acids to help nourish your dog's skin and coat

 Made in the USA with the World's Finest Ingredients

20. In addition to the Nutrition Claim, Mars also provides consumers with the following "Nutritional Commitment":



**Nutritional Commitment**

PEDIGREE® dry and wet dog food and treats encourage, support, fortify and fuel a dog's power to be their healthiest and happiest selves at every stage of life — puppy, adult and senior.

21. Similarly, Mars makes the following promise regarding "Professional Nutrition":

**Professional Nutrition**

All PEDIGREE® recipes are created with quality ingredients and formulated for professional nutrition to bring out your dog's best.

**B. The Nutrition Claim is Material**

53. The Nutritional Claim is material – i.e., it is important to consumers with respect to their decision to purchase the Contaminated Kibble.

54. Reasonable consumers understand the Nutrition Claim to mean the Contaminated Kibble contains all the nutrients required for a pet and that those nutrients are present in amounts suitable for a pet.

55. Indeed, consumers are told that if a pet food "includes the phrase 'complete and balanced,' then the product is intended to be fed as a pet's sole diet and should be nutritionally balanced."[3]

56. "Complete" means the pet food contains all the nutrients required, while "Balanced" means the nutrients are present in the correct ratios.[4]

57. For a pet food to be "complete and balanced" it must either meet one of the Dog or Cat Food nutrient profiles established by the Association of American Feed Control Officials ("AAFCO") or pass a feeding trial.[5] For a product to meet the AAFCO nutrient profiles, it must contain the required nutrients at the recommended level. *Id.*

---

[3] https://www.fda.gov/animal-veterinary/animal-health-literacy/complete-and-balanced-pet-food
[4] https://www.aafco.org/consumers/understanding-pet-food/selecting-the-right-pet-food/
[5] Id.

## C. The Contaminated Kibble Contains Excessive Vitamin D

58. Vitamin D is an essential nutrient that allows dogs to regulate the balance and retention of calcium and phosphorus.[6] Vitamin D is a fat-soluble vitamin that is stored in the fat tissue and liver of pets. *Id.* Unlike water-soluble vitamins, pets cannot rapidly excrete Vitamin D through their urine. *Id.*

59. Dogs that eat pet food containing too much Vitamin D can develop Vitamin D toxicity and will show signs of illness, including diarrhea vomiting, inappetence, increased drinking and urination, excessive drooling, and weight loss.[7]

60. Under AAFCO's nutritional profile for "complete and balanced" pet food Vitamin D must be in the following levels:[8]

| Nutrient | Units on a Dry Matter ("DM") basis | Growth and Reproduction Minimum | Adult Maintenance Minimum | Maximum |
|---|---|---|---|---|
| Vitamin D | IU/kg | 500.0 | 500.0 | 3,000 |

61. On February 12, 2025, Consumer Reports reported that it had conducted independent testing studying the nutritional profiles of popular pet foods. Consumer Reports tested three samples of the Contaminated Kibble. The independent testing revealed that the Contaminated Kibble contained an average of ***14,282*** IU/kg of Vitamin D, more than ***28 times*** the minimum maintenance amount and ***4.8 times*** the maximum amount permitted by AAFCO. *See* **Exhibit A**.

62. The presence of excessive Vitamin D renders the Nutrition Claim false, because the Contaminated Kibble is unbalanced and incomplete due to the excessive Vitamin D levels.

---

[6] https://www.fda.gov/animal-veterinary/animal-health-literacy/vitamin-d-toxicity-dogs

[7] https://vcahospitals.com/know-your-pet/vitamin-d-poisoning-in-dogs

[8] https://www.aafco.org/wp-content/uploads/2023/01/Model_Bills_and_Regulations_Agenda_Midyear_2015_Final_Attachment_A.__Proposed_revisions_to_AAFCO_Nutrient_Profiles_PFC_Final_070214.pdf

# CLASS ACTION ALLEGATIONS

63. Plaintiffs hereby incorporate by reference and re-alleges herein the allegations contained in all preceding paragraphs of this complaint. Plaintiffs seek to represent the following class:

> **Nationwide Class**: all people in the United States who purchased the Contaminated Kibble within the applicable statute of limitations.

Plaintiff Attias also seeks to represent the following subclass:

> **New York Subclass**: all people in New York who purchased the Contaminated Kibble within the applicable statute of limitations.

Plaintiff Nadeau also seeks to represent the following subclass:

> **Michigan Subclass**: all people in Michigan who purchased the Contaminate Kibble within the applicable statute of limitations

64. Pursuant to Fed. Civ. P. 23(c)(1)(C), each of the above class definitions is a placeholder that may be altered or amended any time before final judgment. As a result of additional information obtained through further investigation and discovery, the above-described Classes may be modified or narrowed as appropriate, including with multi-state subclasses to account for material variations in state law, if any.

65. Excluded from the Classes are: (1) anyone who bought the Contaminated Kibble for the purpose of resale; (2) any Judge or Magistrate presiding over this action and any members of their families; (3) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parent has a controlling interest and their current or former employees, officers, and directors; and (4) Plaintiffs' counsel and Defendant's counsel.

66. **Numerosity**: At this time, Plaintiffs do not know the exact number of members of the aforementioned Classes. However, given the nature of the claims, Plaintiffs believe the Members of the Classes are so numerous that joinder of all members is impracticable.

67. **Commonality and Predominance**: There is a well-defined community of interest in the questions of law and facts involved in this case. Questions of law and fact common to the Classes that predominate over questions that may affect individual Class Members include:

   a. Whether the Contaminated Kibble provided a "100% Complete & Balanced" diet for dogs;

   b. Whether Defendant's Nutrition Claim and warranties are false;

   c. Whether Plaintiffs reasonably relied on Defendant's Nutrition Claim;

   d. Whether Defendant's conduct violated state laws and the common law;

   e. Whether Plaintiffs and Class Members sustained damages as a result of Defendant's violations of state and common law; and

   f. Whether Plaintiffs and Class Members are entitled to statutory damages.

68. **Typicality**: The claims of the named Plaintiffs are typical of the claims of the Class Members because Plaintiffs, like the Class Members, purchased the Contaminated Kibble from Defendant relying on Defendant's same representations and warranties that the Contaminated Kibble would provide a "100% Complete & Balanced" diet for pets.

69. **Adequate Representation**: Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the Class Members they seek to represent. Plaintiff has retained competent counsel experience in prosecuting class actions and they intend to prosecute this action vigorously. The interests of Class Members will be fairly and adequately protected by Plaintiffs and their counsel.

70. **Superiority**: The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class Members. Each individual Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action

device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issue will ensure that all the claims and claimants are before this Court for consistent adjudication of issues

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
**Violation of New York General Business Law § 349**

71. Plaintiff Attias incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

72. Plaintiff Attias brings this cause of action on behalf of herself and the New York Subclass.

73. New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

74. In the sale of goods throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of New York's General Business Law § 349.

75. Plaintiff Attias and New York Subclass Members are consumers who purchased the Contaminated Kibble for their personal use.

76. By the acts and conduct alleged herein, Defendant engaged in deceptive, unfair, and misleading acts and practices, as alleged above.

77. The foregoing deceptive acts and practices were directed at consumers.

78. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics and quality of the Contaminated Kibble to induce consumers to purchase the same.

79. By reason of this conduct, Defendant engaged in deceptive conduct in violation of New York's General Business Law.

80. Defendant's actions are the direct, foreseeable, and proximate cause of the damages Plaintiff and class members have sustained from having paid for and used the Contaminated Kibble.

81. As a result of Defendant's violations, Plaintiff Attias and New York subclass members have suffered damages because: (a) they would not have purchased the Contaminated Kibble on the same terms if they knew about Defendant's misrepresentations; (b) they paid price premium for the Contaminated Kibble due to the misrepresentations; and (c) the Contaminated Kibble does not have the characteristics, uses, benefits, or qualities as promised.

82. Plaintiff Attias seeks all available relief under this cause of action.

## SECOND CAUSE OF ACTION
### Violation of New York General Business Law § 350

83. Plaintiff Attias incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

84. Plaintiff Attias brings this cause of action on behalf of herself and the New York Subclass.

85. New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

86. Pursuant to said statute, false advertising is defined as "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect."

87. Based on the foregoing, Defendant engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of New York's General Business Law § 350.

88. Defendant's false, misleading, and deceptive statements and representations of fact were and are directed toward consumers. Defendant also actively concealed and knowingly admitted material facts regarding the true nature of the Contaminated Kibble.

89. Defendant's false, misleading, and deceptive statements and representations of fact and omissions were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

90. Defendant's false, misleading, and deceptive statements and representations of fact have resulted in consumer injury or harm to the public interest.

91. As a result of Defendant's false, misleading, and deceptive statements and representations of fact, Plaintiff Attias and New York subclass members have suffered and continue to suffer economic injury.

92. As a result of Defendant's violations, Plaintiff Attias and New York subclass members have suffered damages because: (a) they would not have purchased the Contaminated Kibble on the same terms if they knew about Defendant's misrepresentations; (b) they paid price premium for the Contaminated Kibble due to the misrepresentations; and (c) the Contaminated Kibble does not have the characteristics, uses, benefits, or qualities as promised.

93. Plaintiff seeks all available relief under this cause of action.

## THIRD CAUSE OF ACTION
### Breach of Express Warranty

94. Plaintiffs incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

95. Plaintiffs brings this cause of action on behalf of themselves and the Nationwide Class. Plaintiff Attias also brings this cause of action on behalf of the New York Subclass. Plaintiff Nadeau also brings this cause of action on behalf of the Michigan Subclass.

96. As the designer, manufacturer, marketer, distributor, and/or seller of the Contaminated Kibble, Defendant issued an express warranty by representing to consumers at the point of purchase that the Contaminated Kibble was a "100% Complete and Balanced" diet.

97. Defendant's representations were part of the description of the Contaminated Kibble and the bargain upon which the Contaminated Kibble was offered for sale and purchased by Plaintiffs and Class Members who reasonably relied on those representations.

98. In fact, the Contaminated Kibble does not conform to the above-referenced representation because, as detailed above, it contains excessive levels of Vitamin D. Thus, the warranty was breached.

99. On March 31, 2025, prior to filing this Complaint, Plaintiffs' counsel sent Defendant a warranty notice letter that complied in all respects with U.C.C. 2-607. The letter provided notice of breach of express warranty. The letter was sent via certified mail with return receipt to Defendant advising Defendant that it was in violation of U.C. C. 2-607 and state consumer protection laws and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom. The letter stated it was sent on behalf of Plaintiffs and all other similarly situated purchasers.

100. As a direct and proximate results of Defendant's breach, Plaintiffs and the Class Members were injured because they: (1) paid money for the Contaminated Kibble that was not as Defendant represented; (2) were deprived of the benefit of the bargain because the Contaminated Kibble they purchased was different than Defendant advertised; and (3) were deprived of the benefit of the bargain because the Contaminated Kibble they purchased had less value than Defendant represented. Had Defendant not breached the express warranty by making the false representations alleged herein, Plaintiffs and the Class Members would not have purchased the Contaminated Kibble or would not have paid as much as they did for them.

101. Plaintiffs seek all available relief under this cause of action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, seeks judgment against Defendant, as follows:

a) For an order certifying the Classes under Fed. R. Civ. P. 23 and naming Plaintiffs as the representatives of the Class or Classes, and Plaintiffs' attorneys as Counsel for the Classes;

b) For an order declaring Defendant's conduct violates the statutes referenced herein;

c) For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

d) For actual, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

e) For prejudgment interest on all amounts awarded; and

f) For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees, expenses, and costs of suit.

## JURY TRIAL DEMANDED

Pursuant to Fed. R. Civ. P. 28(b), Plaintiffs demand a trial by jury on all claims so triable.

Dated: May 2, 2025        Respectfully submitted,

**LAW OFFICE OF MARK N. FOSTER, PLLC**

By: */s/ Mark N. Foster*

Mark N. Foster, TN BPR #023626
**LAW OFFICE OF MARK N. FOSTER, PLLC**
P.O. Box 869
Madisonville, KY 42431
Telephone: (270) 213-1303
E-Mail: MFoster@MarkNFoster.com

Brittany S. Scott
(*pro hac vice* motion forthcoming)
**SMITH KRIVOSHEY, PC**
166 Geary Str STE 1500-1507
San Francisco, CA 94108
Telephone: 415-839-7077
Facsimile: (888) 410-0415
E-Mail: brittany@skclassactions.com

*Attorneys for Plaintiff and the proposed Classes*